# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. L. HENDERSON, Minor.

UNPUBLISHED
November 14, 2017

No. 336561
Leelanau Circuit Court
Family Division
LC No. 15-009455-NA

Before: HOEKSTRA, P.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to AL under MCL 712A.19b(3)(c)(*i*), (g), and (j). Because the trial court did not clearly err by terminating respondent's parental rights, we affirm.

In March of 2015, respondent was admitted to a psychiatric hospital unit as a result of her paranoid and manic behavior. AL was later removed from respondent's care and placed with her maternal grandparents. Despite opportunities for services and mental health treatment, respondent continued to struggle with serious mental illnesses that prevented her from providing proper care for AL. Following a bench trial in December of 2016, the trial court terminated respondent's parental rights to AL. Respondent now appeals as of right.

On appeal, respondent first argues that petitioner did not create an effective treatment plan to accommodate her post traumatic stress disorder (PTSD) diagnosis as required by the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. Specifically, respondent contends that she was misdiagnosed with, and improperly treated for, bipolar disorder, paranoia, psychosis, and schizophrenia. According to respondent, her correct diagnosis is PTSD. Absent reasonable accommodations for her PTSD, respondent argues that termination was improper.

Whether respondent received reasonable reunification services involves the trial court's findings of fact, which this Court reviews for clear error. MCR 3.977(K); *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). A decision is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

"Under Michigan's Probate Code, the [Department of Health and Human Services (DHHS)] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, ___ Mich ___, ___; 893 NW2d 637 (2017); slip op at 4. These reunification services must comply with the ADA, meaning that the DHHS

must "make reasonable accommodations for those individuals with disabilities . . . ." *In re Terry*, 240 Mich App 14, 25; 610 NW2d 563 (2000).

> Absent reasonable modifications to the services or programs offered to a disabled parent, the [DHHS] has failed in its duty under the ADA to reasonably accommodate a disability. In turn, the [DHHS] has failed in its duty under the Probate Code to offer services designed to facilitate the child's return to his or her home, see MCL 712A.18f(3)(d), and has, therefore, failed in its duty to make reasonable efforts a reunification under MCL 712A.19a(2). [*In re Hicks/Brown*, ___ Mich at ___; slip op at 5.]

"While the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). And, once children come within the jurisdiction of the court, "a parent, whether disabled or not, must demonstrate that she can meet their basic needs before they will be returned to her care." *In re Terry*, 240 Mich App at 28.

In this case, there is no doubt that respondent suffers from mental illness. The case began in March of 2015, when Child Protective Services (CPS) filed a petition alleging that respondent was exhibiting significant mental health concerns, including paranoia. Respondent has been diagnosed with bipolar disorder with maniac and severe psychosis, PTSD, paranoia, and schizophrenia. While many of respondent's medical records state that her primary diagnosis was bipolar disorder, there are records indicating that respondent was also diagnosed with PTSD.

Recognizing that respondent had serious mental health concerns, the DHHS offered respondent numerous services aimed at addressing her mental illnesses. In particular, the case service plan required respondent to attend counseling and psychiatric appointments on a regular basis, take all prescribed medication as directed, follow recommendations of the professionals, and communicate openly and honestly with the service providers about her symptoms and problematic thoughts. Consistent with this plan, respondent received a psychological evaluation as well as in-patient and out-patient services. While this case was pending, she was hospitalized on several occasions, she was prescribed medications, and she received mental health treatment from numerous mental health professionals. In addition to these opportunities for mental health treatment, respondent received various other services aimed at reunification, including Families First, family team meetings, parent/child bonding assessment, and supportive supervision services for visitation with AL.

Respondent does not dispute that, in general, she received opportunities for services and mental health treatment. Instead, she claims that her only correct diagnosis is PTSD, meaning that mental health treatments focused on a variety of mental illnesses, including bipolar disorder, were improper and that the DHHS's approach to services was inadequate because it was not tailored to her PTSD diagnosis. This argument is without merit because the record demonstrates that PTSD was only one component of respondent's mental health concerns and that the DHHS provided her with appropriate services aimed at addressing all of her mental illnesses.

First of all, contrary to respondent's claim that she only suffers from PTSD, the trial court concluded that, in addition to PTSD, respondent also suffered from other mental illnesses, including bipolar disorder. This conclusion was not clearly erroneous. As noted, respondent's medical records indicate that she was diagnosed with bipolar disorder as well as PTSD and other illnesses. In contrast, to support of her claim that she only suffers from PTSD, respondent cites to the testimony of two experts retained by respondent, Dr. Janice DeLange and Dr. Laurie Katzman, both of whom opined that respondent's primary diagnosis was PTSD. However, while identifying PTSD as respondent's primary diagnosis, Katzman and DeLange noted that PTSD can have similar symptoms to bipolar disorder, and they conceded that they had not completely ruled out bipolar disorder. In any event, to the extent DeLange and Katzman disagreed with the diagnoses made by other mental health professionals, their credibility was a question for the trial court, *In re Fried*, 266 Mich App at 541; and, the trial court had reasonable concerns about their credibility given their heavy reliance on respondent's self-reporting in making their diagnoses. Faced with various medical records and opinions, the trial court reasonably concluded that respondent suffered from several mental illnesses, including PTSD.

Regarding the adequacy of the treatment respondent received for her PTSD, the DHHS referred respondent to mental health experts, and we cannot conclude that the DHHS acted unreasonably by entrusting her treatment to mental health professionals. Furthermore, we note that, in terms of the treatment for PTSD, Katzman testified that the treatment for bipolar disorder and PTSD would actually be very similar. She explained:

> Well, you know, the reality is . . . that the treatment[s] are very similar, you know. We use the same type of medicines in psychiatry, we don't prescribe treatment based on diagnosis, we prescribe treatment based on symptoms and the symptoms that I have seen would be responsive to medications that can be used for [PTSD] [and] for bipolar disorder.

Given Katzman's testimony, we fail to see how the mental health services provided by the DHHS—which respondent concedes included treatment for bipolar disorder—can be considered inadequate. Indeed, as discussed by the trial court, the record shows that during periods when respondent complied with her treatment plan and took her prescribed medications, her mental health stabilized. For example, in July of 2015, AL was returned to respondent's care because respondent appeared stable. AL was removed again in October of 2015, after respondent stopped taking her medications and again demonstrated paranoid behaviors. Respondent's improvement when she complied with her service plan and medication regime belies her assertion that she received inadequate treatment for PTSD or her other mental health concerns.

More generally, while respondent attempts to fault the DHHS for not addressing her specific needs in light of her PTSD diagnosis, the record shows that this is a case where respondent refused to cooperate with, and benefit from, the services offered to her. As discussed, the mental health services offered to respondent were extensive. Rather than avail herself of these opportunities, respondent failed to consistently take medications as prescribed, she threatened individuals involved with her case, and, in February of 2016, she chose to discontinue services altogether and to stop visiting AL. Given respondent's refusal to cooperate, the DHHS cannot be faulted for failing to take additional measures to address respondent's mental illnesses.

Overall, the evidence supports the conclusion that respondent suffered from several mental illnesses, including PTSD, which the DHHS sought to address with mental health treatment. Unfortunately, respondent failed to comply with, and benefit from, the services offered. On this record, we cannot conclude that the DHHS failed to provide reunification services to respondent, and we are not definitely and firmly convinced that the DHHS failed to appropriately tailor those services to respondent's disability. Thus, respondent is not entitled to relief on this basis.

Finally, respondent also argues that the trial court erred when it found that the statutory grounds for termination had been established. According to respondent, she is a caring and nurturing parent who simply needs time to address her mental health issues. Respondent reiterates her argument that the DHHS failed to provide her with appropriate mental health treatment for her PTSD diagnosis. Based on the testimony of Katzman and DeLange, respondent contends that with six months of correct mental health treatment aimed at PTSD she will be able to parent AL. In these circumstances, respondent asserts that she should be provided additional time for services and that termination was premature.

Before a parent's rights may be terminated, petitioner bears the burden of proving the existence of at least one of the conditions in MCL 712A.19b(3) by clear and convincing evidence. *In re JK*, 468 Mich at 210. "This Court reviews for clear error the trial court's ruling that a statutory ground has been established . . . ." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). See also MCR 3.977(K). "[R]egard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

In this case, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

> (c) The parent was a respondent in a proceeding under this chapter, 182 or more days have elapsed since the issuance of an initial disposition order, and the court, by clear and convincing evidence, finds . . .

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

For purposes of MCL 712A.19b(3)(c)(*i* ), the condition leading to adjudication in this case was respondent's mental illness, specifically her paranoid and manic behavior, which prevented her from providing proper care for AL. More than 182 days elapsed following the issuance of the initial dispositional order and, despite the opportunity for services and mental health treatment, respondent remained unable to provide proper care for AL as a result of her unaddressed mental illnesses. Thus, the condition leading to the adjudication continued to exist. In terms of whether the condition can be rectified, based on the opinions of Katzman and DeLange, respondent contends that she can resolve the condition leading to adjudication if she is given more time. However, the credibility of Katzman and DeLange was for the trial court. *In re Miller*, 433 Mich at 337. And, any assertion that respondent might improve in six months is undercut by the fact that respondent had been given considerably longer than six months to participate in services, but she instead discontinued services and stopped visiting AL. Given respondent's noncompliance with her case service plan, her lack of progress, and her decision to discontinue services and to stop visiting AL, the trial court did not clearly err by concluding that there was no reasonable expectation that respondent's mental health concerns would be rectified in a reasonable time considering AL's age. See *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). In these circumstances, the trial court did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

This same evidence also supports the trial court's decision to terminate respondent's parental rights under MCL 712A.19b(3)(g) and (j). As discussed, due to her paranoid and manic behavior, respondent has failed to provide proper care and custody for AL; and, given her noncompliance with her service plan and her lack of progress in addressing her serious mental illnesses, the evidence supports the conclusion that there is no reasonable expectation that respondent will be able to provide proper care and custody for AL in a reasonable time considering AL's age. See *In re White*, 303 Mich App at 710. Likewise, respondent's erratic behavior, her noncompliance with her service plan, and her lack of progress in addressing her mental illnesses, demonstrate that AL will be harmed if returned to respondent's home. See *id.* at 710-711. Thus, the trial court did not clearly err in concluding that a statutory basis to terminate respondent's parental rights existed under 712A.19b(3)(g) and (j).

Affirmed.

/s/ Joel P. Hoekstra
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro

-5-